# EXHIBIT A-1

Filing # 242737308 E-Filed 02/27/2026 01:59:06 PM

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

CLAY GROSSMAN,

    *Plaintiff,*

    v.

EQUIFAX INFORMATION SERVICES,
LLC, EXPERIAN INFORMATION
SOLUTIONS, INC., INNOVATIVE
RECOVERY, INC., and TRANS UNION
LLC,

    *Defendants.*

Case No:

JURY TRIAL DEMANDED

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Clay Grossman ("Mr. Grossman"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Innovative Recovery, Inc. ("Innovative"), **and** Trans Union LLC ("Trans Union") (collectively, the "Defendants"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages between $50,000 and $75,000, brought by Mr. Grossman against all Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), against Innovative only for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and Florida's Consumer Collection Practices Act § 559.55, Fla. Stat., *et seq.* ("FCCPA").

2. The FCRA, FDCPA and FCCPA each permit a prevailing Plaintiff to recover unliquidated actual damages which are determined by a jury. Plaintiff's estimate of damages

between $50,000 and $75,000 are for jurisdictional purposes only and in no way intended to limit Plaintiff's potential recovery.

## JURISDICTION AND VENUE

3.     Subject matter jurisdiction arises under § 26.012, Fla. Stat., as well as the FCRA, 15 U.S.C. § 1681p, the FDCPA, 15 USC 1692k(d), and the FCCPA, § 559.77(1), Fla. Stat.

4.     Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat.

5.     Venue is proper in Hillsborough County, Florida because the events giving rise to this cause of action occurred within Hillsborough County.

## PARTIES

6.     Mr. Grossman is a natural person who at all times relevant has resided in Tampa, Hillsborough County, Florida.

7.     Mr. Grossman is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c), the FDCPA, 15 U.S.C. § 1692a(3), and the FCCPA, § 559.55(8), Fla. Stat.

### Equifax, Experian & Trans Union

8.     Equifax is a Georgia limited liability company with a principal address of 1550 Peachtree St. NW., Atlanta, GA, 30309.

9.     Equifax is registered to conduct business in the State of Florida, where its registered agent is Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.

10.    Experian is an Ohio corporation with a primary business address of 475 Anton Blvd., Costa Mesa, CA 92626.

11.    Experian is registered to conduct business in the State of Florida, where its registered agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

12.     Trans Union is a Delaware limited liability company with a principal business address of 555 West Adams Street, Chicago, IL 60661.

13.     Trans Union is registered to do business in the State of Florida, where its registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

14.     Equifax, Experian, and Trans Union are each a consumer reporting agency ("CRA") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, they regularly engages in the practice of assembling or evaluating consumer credit information on consumers for the purpose of furnishing consumer reports to third parties, while using means of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

### Innovative

15.     Innovative is a Texas corporation with a principal address of 5310 Harvest Hill Rd., Ste. 277, Dallas, TX 75230.

16.     Innovative is registered to do business in the State of Florida, where its registered agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

17.     Innovative is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in that it uses an instrumentality of interstate commerce, including postal mail and the internet, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

18.     Innovative was licensed as a Consumer Collection Agency ("CCA") by the Florida Office of Financial Regulation, holding license number CCA9902018. Its license has expired.

## FACTUAL ALLEGATIONS

### The Alleged Debt

19.     Sometime in or around March 28, 2024, an unknown individual or individuals used Mr. Grossman's identity and personal information to obtain a residential lease at Westgate on University Apartments ("Westgate Apartments") in Lauderhill, Florida.

20.     The individual(s) impersonating Mr. Grossman when signing the lease indicated the co-resident was "Daelyn grossman" (SIC).

21.     Mr. Grossman does not know any "Daelyn Grossman" nor is he related to any such person.

22.     The lease appears to have been electronically signed via a platform called Blue Moon eSignature Services; the electronic signature purporting to be that of Mr. Grossman contains a typo, i.e. the last name is not capitalized.

**Resident or Residents**
*(all sign below)*

*Clay grossman*

23.     By May 16, 2025, Westgate Apartments alleged $14,159 was past-due and owing by Mr. Grossman (the "Debt").

24.     On or around May 16, 2025, Westgate Apartments placed the Debt for collection with Innovative and instructed it to collect $14,159 from Mr. Grossman.

25.     On December 3, 2025, Mr. Grossman received a call from Innovative seeking to collect a $14,159 debt (the "Debt") he allegedly incurred to Westgate Apartments.

26.     Mr. Grossman has never lived at Westgate Apartments, nor authorized, co-signed or guaranteed any lease concerning the rental of an apartment at Westgate Apartments.

27.     Mr. Grossman has at no point authorized anyone to use his name, or other personal identifying information, to rent or lease any apartment, or to guarantee or co-sign any lease.

28.     Indeed, Mr. Grossman has lived at his current address in Tampa, Florida since July 2015.

29.     Mr. Grossman has never lived in Lauderhill, Florida.

30.     Nonetheless, the Debt is alleged to have arose from a transaction in which the property was primarily for personal, family, or household purposes – a residential apartment lease – and thus, the Debt meets the definition of "debt" under the FDCPA and FCCPA, 15 U.S.C. § 1692a(5) and § 559.55(6), Fla. Stat., respectively.

31.     As Mr. Grossman never authorized, incurred, or otherwise consented to charges Westgate Apartments, and was unaware of the Debt until receiving a phone call attempting to collect it, he disputes owing the Debt.

32.     Mr. Grossman filed a police report with the Tampa Police Department, report number 2025-852792, stating his identity had been stolen and fraudulently used to obtain services, including those underlying the Debt.

### Mr. Grossman's Disputes of the Debt to the CRAs

33.     Upon receiving a collection call attempting to collect a debt he did not owe, Mr. Grossman immediately checked his credit reports from Equifax, Experian and Trans Union and discovered that Innovative was reporting the Debt to all three CRAs as an unpaid collection balance.

34.     Mr. Grossman then disputed Innovative's reporting of the Debt to each CRA, indicating he did not live at the apartment and that it was not his debt.

35.     Upon receipt of the dispute from Mr. Grossman, each CRA sent Innovative an Automated Consumer Dispute Verification form ("ACDV") through an online platform known as e-OSCAR, notifying Innovative of the dispute and asking Innovative to conduct a reasonable investigation into the dispute.

36.     On or about December 6, 2025, Innovative responded to the ACDVs, verifying its reported information as accurate and indicating that its tradeline should continue to report.

37.     None of the CRAs made any independent investigation into Mr. Grossman's disputes; the sending of, and return receipt of, the ACDVs constituted the start, as well as the finish, of each CRA's investigation.

38.     After receiving the results of his dispute, Mr. Grossman submitted additional disputes to each CRA, once again outlining that the Debt was not his.

39.     Each CRA sent Innovative another ACDV, once again notifying Innovative of the dispute and asking Innovative to conduct a reasonable investigation into the dispute.

40.     On or about December 13, 2025, Innovative completed its investigation into this second dispute, once again verifying its reported information as accurate and indicating it should continue to report.

41.     Mr. Grossman submitted additional disputes to Equifax, Experian and Trans Union throughout late December and early January 2026.

42.     Mr. Grossman's disputes included the police report number and clearly indicated Mr. Grossman never lived at the property and that the Debt was not his liability.

43.     Once again, each dispute by Mr. Grossman resulted in the CRA simply notifying Innovative via ACDV and requesting Innovative investigate the dispute.

44.    Each dispute by Mr. Grossman resulted in verification of the reported information as accurate by Innovative, as well as each CRA.

45.    Like before, none of the CRAs made any independent investigation into Mr. Grossman's disputes, even though what he claimed – that someone had fraudulently obtained an apartment lease using his information – was readily, easily, and objectively verifiable.

46.    Innovative failed to conduct a reasonable investigation into each of these disputes, as any reasonable investigation would have concluded that the Debt was not Mr. Grossman's and was likely incurred as a result of identity theft.

47.    Innovative is a large debt collector who receives a high volume of disputes concerning apartment debts which it reports to CRAs, including a good number which are the result of identity theft.

48.    Despite this, upon information and belief Innovative simply rubber-stamped each ACDV as "accurate" after making a quick verification of the data in the CRA's files against the data in its own internal systems.

49.    At no point did Innovative contact Mr. Grossman directly in furtherance of its investigations.

50.    Indeed, on or around January 7, 2026, well after Mr. Grossman had notified Innovative via a phone call, as well as via multiple disputes to the CRAs, Innovative re-reported the Debt to the CRAs and thus re-alleged the purported $14,159 balance due.

51.    With respect to its January 7, 2026 reports in particular, Innovative was aware it was communicating credit information which was almost certainly false, but made such communications to the CRAs anyway.

Page 7 of 23

## CRAs Investigations Were Not Reasonable

52.    CRAs such as Equifax, Experian and Trans Union have their own legal duty to investigate a dispute. 15 U.S.C. § 1681i(a)(1)(A).

53.    However, the CRAs conducted little investigation of their own, accepting Innovative's ACDV responses without alteration or independent investigation.

54.    Equifax, Experian and Trans Union thus failed to make reasonable investigations into Mr. Grossman's disputes.

55.    On information and belief, the CRAs merely compared the personal identifying information ("PII") received from Innovative with that in their file on Mr. Grossman. Because the PII matched, the ACDV responses were accepted and Innovative's tradeline continued to report.

56.    Such a policy is practically a recipe for an unreasonable investigation of identity theft, as it is almost axiomatic that using a date of birth and Social Security number to confirm the identity of an accountholder whose identity has been stolen will result in a false positive.

57.    For at least the last 40 years, courts in this district have recognized that a CRA cannot rely upon its data furnisher exclusively, when the consumer disputes the accuracy of the furnisher's version of events and provides evidence to the contrary. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985).

58.    If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

59.     At no point did anyone on behalf of Equifax, Experian or Trans Union contact Mr. Grossman directly in furtherance of an investigation into his disputes.

60.     Had Equifax, Experian or Trans Union made any meaningful investigation of their own, they would have quickly determined the Innovative tradeline could not be verified as accurate and removed it from Mr. Grossman's file.

61.     Each CRA considered Innovative confirmation of accuracy to be sufficient to verify the accuracy of Innovative's reporting, despite each of the CRAs having significant objectively verifiable information supporting Mr. Grossman's disputes of liability.

62.     For example, each CRA had information furnished by Suncoast Credit Union in its files on Mr. Grossman, indicating he has a mortgage for his primary residence in Tampa and is a homeowner.

63.     Each CRA had information furnished by more than two dozen other creditors, each one of which reported Mr. Grossman lived in Tampa, and not in Lauderhill.

64.     Experian's credit file indicated Suncoast Credit Union made a "hard" credit inquiry on October 21, 2024 – during the time Mr. Grossman was supposedly living in the apartment in Lauderhill – concerning the financing of a car at a Tampa-area dealership.

65.     Experian also recorded the address associated with the inquiry as Mr. Grossman's true Tampa address.

66.     In sum, despite Experian receiving a dispute stating a debt was the result of identity theft, and that it had been reported to law enforcement as such, and despite Experian's own credit file on Mr. Grossman showing more than two dozen creditors reporting his Tampa address as his billing address, showing he owned a home in Tampa, and showing he had applied to finance a car in Tampa during the time he was "renting" an apartment in Lauderhill, Experian considered

Innovative's clicking of a single box on an ACDV stating the information was "verified as accurate" to be sufficient to establish Mr. Grossman also, somehow, owed $14,159 to an apartment complex more than 200 miles away.

67.     Likewise, Trans Union, ignored the considerable data in its own credit file on Mr. Grossman, which also showed more than two dozen creditors reporting his Tampa address as his billing address and showing he owned a home in Tampa. Trans Union, too, considered Innovative's clicking of a single box on an ACDV stating the information was "verified as accurate" to be sufficient to establish Mr. Grossman also, somehow, owed $14,159 to an apartment complex more than 200 miles away.

68.     As a result of the Defendants' conduct, Mr. Grossman has suffered significant damage to his credit history and scores.

69.     Since Innovative first reported the Debt to the CRAs, Mr. Grossman has applied for numerous credit cards, including a revolving account with Credit First, National Association, and an installment account with Greensky Financial.

70.     Mr. Grossman has had numerous creditors and potential creditors obtain his Trans Union consumer report since disputing the Innovative account, including:

        a.     Bank of America;

        b.     Synchrony Bank, relating to its Project Card and Care Credit;

        c.     Discover Card;

        d.     Upgrade, Inc.; and,

        e.     Credit First.

71. Mr. Grossman has had numerous creditors and potential creditors obtain his Experian consumer report since disputing the Innovative account, including Discover, Suncoast Credit Union, Community Servicing, Inc., and Wells Fargo.

72. Mr. Grossman has had at least one creditor obtain his Equifax report since disputing the Innovative Account, as Comenity Bank requested and obtained his report on January 6, 2026.

73. Mr. Grossman has hired this law firm to represent him in this matter and has assigned the firm his right to fees and costs.

## COUNT I
### WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)
### Innovative Only

74. Mr. Grossman hereby incorporates paragraphs 1 – 73 as if fully stated herein.

75. Innovative violated 15 U.S.C. § 1681s-2(b) when it failed to conduct a reasonable investigation after receiving notice of dispute of its reporting of the Debt from Experian, Equifax and/or Trans Union, at least six separate times, as any reasonable investigation would have concluded that the Debt could not be verified as accurate, as Mr. Grossman had never resided at the apartment or otherwise authorized the expenses which make up the alleged Debt.

76. Innovative's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not.

77. Innovative's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. Grossman.

78. Accordingly, pursuant to 15 U.S.C. § 1681n, Innovative is liable to Mr. Grossman for the greater of his actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Grossman respectfully requests this Honorable Court to enter judgment against Innovative for:

a.    The greater of statutory damages of $1,000 per incident or Mr. Grossman's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT II
## NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)
### Innovative Only

### Pled in the alternative to Count I

79.    Mr. Grossman hereby incorporates paragraphs 1 – 73 as if fully stated herein.

80.    Innovative owed Mr. Grossman a legal duty to conduct a reasonable investigation into his disputes upon receiving notice of same from a CRA.

81.    Innovative breached this duty when it failed to conduct a reasonable investigation after receiving notice that Mr. Grossman disputed its reporting of the Debt from a CRA on at least six separate occasions, as any reasonable investigation would have concluded that the Debt could not be verified as accurate, as Mr. Grossman had never resided at the apartment or otherwise authorized the expenses which make up the alleged Debt.

82.    Innovative's breach violated 15 U.S.C. § 1681s-2(b), and as a result, Innovative is liable, pursuant to 15 U.S.C. § 1681o, to Mr. Grossman for his actual damages, as well as his reasonable attorney's fees, and costs.

WHEREFORE, Mr. Grossman respectfully requests this Honorable Court to enter judgment against Innovative for:

a.    Mr. Grossman's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

## COUNT III
### WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
### Experian Only

83.    Mr. Grossman hereby incorporates paragraphs 1 – 73 as if fully stated herein.

84.    Experian violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation after receiving notice of dispute of the Innovative tradeline on at least two separate occasions, as any reasonable investigation would have concluded that the Debt could not be verified as accurate, as Mr. Grossman had never resided at the apartment or otherwise authorized the expenses which make up the alleged Debt.

85.    Experian's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and consist of little more than acceptance of the furnisher's investigation with no independent investigation conducted by Experian.

86.    Experian's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. Grossman.

87.    Accordingly, pursuant to 15 U.S.C. § 1681n, Experian is liable to Mr. Grossman for the greater of his actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Grossman respectfully requests this Honorable Court to enter judgment against Experian for:

a.    The greater of statutory damages of $1,000 per incident or Mr. Grossman's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT IV
## NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
### Experian Only

**Pled in the alternative to Count III**

88.    Mr. Grossman hereby incorporates paragraphs 1 – 73 as if fully stated herein.

89.    Experian owed Mr. Grossman a legal duty to conduct a reasonable investigation into his disputes upon receiving notice of same.

90.    Experian breached this duty when it failed to conduct a reasonable investigation after receiving notice that Mr. Grossman disputed its reporting of the Debt on at least two separate occasions, as any reasonable investigation would have concluded that the Debt could not be verified as accurate, as Mr. Grossman had never resided at the apartment or otherwise authorized the expenses which make up the alleged Debt.

91.     Experian's breach violated 15 U.S.C. § 1681i(a)(1)(A), and as a result, Experian is liable, pursuant to 15 U.S.C. § 1681o, to Mr. Grossman for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Grossman respectfully requests this Honorable Court to enter judgment against Experian for:

a.      Mr. Grossman's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.      Such other relief that this Court deems just and proper.

**COUNT V**
**WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)**
**Equifax Only**

92.     Mr. Grossman hereby incorporates paragraphs 1 – 73 as if fully stated herein.

93.     Equifax violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation after receiving notice of dispute of the Innovative tradeline on at least two separate occasions, as any reasonable investigation would have concluded that the Debt could not be verified as accurate, as Mr. Grossman had never resided at the apartment or otherwise authorized the expenses which make up the alleged Debt.

94.     Equifax's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and consist of little more than acceptance of the furnisher's investigation with no independent investigation conducted by Equifax.

95.     Equifax's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. Grossman.

96.     Accordingly, pursuant to 15 U.S.C. § 1681n, Equifax is liable to Mr. Grossman for the greater of his actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Grossman respectfully requests this Honorable Court to enter judgment against Equifax for:

a.     The greater of statutory damages of $1,000 per incident or Mr. Grossman's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.     Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.     Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.     Such other relief that this Court deems just and proper.

## COUNT VI
### NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
### Equifax Only

**Pled in the alternative to Count V**

97.     Mr. Grossman hereby incorporates paragraphs 1 – 73 as if fully stated herein.

98.     Equifax owed Mr. Grossman a legal duty to conduct a reasonable investigation into his disputes upon receiving notice of same.

99.     Equifax breached this duty when it failed to conduct a reasonable investigation after receiving notice that Mr. Grossman disputed its reporting of the Debt on at least two separate occasions, as any reasonable investigation would have concluded that the Debt could not be

verified as accurate, as Mr. Grossman had never resided at the apartment or otherwise authorized the expenses which make up the alleged Debt.

100.    Equifax's breach violated 15 U.S.C. § 1681i(a)(1)(A), and as a result, Equifax is liable, pursuant to 15 U.S.C. § 1681o, to Mr. Grossman for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Grossman respectfully requests this Honorable Court to enter judgment against Equifax for:

a.    Mr. Grossman's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

**COUNT VII**
**WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)**
**Trans Union Only**

101.    Mr. Grossman hereby incorporates paragraphs 1 – 73 as if fully stated herein.

102.    Trans Union violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation after receiving notice of dispute of the Innovative tradeline on at least two separate occasions, as any reasonable investigation would have concluded that the Debt could not be verified as accurate, as Mr. Grossman had never resided at the apartment or otherwise authorized the expenses which make up the alleged Debt.

103.    Trans Union's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and consist of little more than acceptance of the furnisher's investigation with no independent investigation conducted by Trans Union.

104. Trans Union's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. Grossman.

105. Accordingly, pursuant to 15 U.S.C. § 1681n, Trans Union is liable to Mr. Grossman for the greater of his actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE**, Mr. Grossman respectfully requests this Honorable Court to enter judgment against Trans Union for:

a. The greater of statutory damages of $1,000 per incident or Mr. Grossman's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT VIII
## NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
### Trans Union Only

### Pled in the alternative to Count VII

106. Mr. Grossman hereby incorporates paragraphs 1 – 73 as if fully stated herein.

107. Trans Union owed Mr. Grossman a legal duty to conduct a reasonable investigation into his disputes upon receiving notice of same.

108. Trans Union breached this duty when it failed to conduct a reasonable investigation after receiving notice that Mr. Grossman disputed its reporting of the Debt on at least two separate occasions, as any reasonable investigation would have concluded that the Debt could not be

verified as accurate, as Mr. Grossman had never resided at the apartment or otherwise authorized the expenses which make up the alleged Debt.

109.    Trans Union's breach violated 15 U.S.C. § 1681i(a)(1)(A), and as a result, Trans Union is liable, pursuant to 15 U.S.C. § 1681o, to Mr. Grossman for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Grossman respectfully requests this Honorable Court to enter judgment against Trans Union for:

a.    Mr. Grossman's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

**COUNT IX**
**VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.**
**Innovative Only**

110.    Mr. Grossman adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

111.    From December 3, 2025 to January 30, 2026, Innovative placed numerous calls to Mr. Grossman seeking to collect the Debt.

112.    Innovative's calls meet the definition of a "communication" under the FCCPA, § 559.55(2), Fla. Stat.

113.    Innovative violated Section 559.72(9), Florida Statutes, when Innovative knowingly asserted a debt was legitimate when it knew it was not, when it continued to attempt to collect the Debt from Mr. Grossman, which Debt concerned an apartment which Mr. Grossman had never resided, nor otherwise authorized agreed to pay for, and despite detailed and meritorious dispute placing Innovative on notice that the Debt was not Mr. Grossman's.

Page 19 of 23

114. Innovative is thus liable for the above-stated violations of the FCCPA, and Mr. Grossman is thereby entitled to actual damages, statutory damages not to exceed $1,000, plus costs and attorneys' fees.

**WHEREFORE,** Mr. Grossman respectfully requests that this Honorable Court enter judgment against Innovative for:

a. Statutory damages of **$1,000** pursuant to § 559.77(2), Florida Statutes;

b. Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to § 559.77(2), Florida Statutes;

c. Injunctive relief prohibiting Innovative from trying to collect the bogus debt from Mr. Grossman;

d. Reasonable costs and attorneys' fees pursuant to § 559.77(2), Florida Statutes; and

e. Such other relief that this Court deems just and proper.

## COUNT X
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e
### Innovative Only

115. Mr. Grossman adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

116. From December 3, 2025 to January 30, 2026, Innovative has placed numerous calls to Mr. Grossman seeking to collect the Debt.

117. Innovative's calls meet the definition of a "communication" under the FDCPA, 15 U.S.C. § 1692a(2).

118. Innovative has reported the Debt to the CRAs monthly since assignment, and has made reports even *after* receiving ACDVs containing information about the police report Mr. Grossman filed.

119. Innovative's reports to the CRAs meet the definition of a "communications" under the FDCPA, 15 U.S.C. § 1692a(2).

120. Innovative violated 15 U.S.C. § 1692e when Innovative used false, deceptive, and misleading representations in connection with the collection of a debt when it sought collection of the Debt from Mr. Grossman, via telephone and credit reporting, falsely representing that Mr. Grossman owed $14,159 to Westgate.

**WHEREFORE,** Mr. Grossman respectfully requests that this Honorable Court enter judgment against Innovative for:

a. Statutory damages of **$1,000,** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d. Such other relief that this Court deems just and proper

## COUNT XI
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(8)
### Innovative Only

121. Mr. Grossman adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

122. Innovative made reports to the CRAs *after* receiving ACDVs containing information about the police report Mr. Grossman filed, and verbal disputes, from Mr. Grossman.

123. Innovative's reports to the CRAs meet the definition of a "communications" under the FDCPA, 15 U.S.C. § 1692a(2).

124. Innovative violated 15 U.S.C. § 1692e(8) when Innovative communicated credit information which was false, and should have been known to be false, by falsely representing that

Page **21** of **23**

Mr. Grossman owed $14,159 to Westgate, after receipt of information from Mr. Grossman clearly establishing he was the victim of identity theft and not liable for the Debt.

**WHEREFORE,** Mr. Grossman respectfully requests that this Honorable Court enter judgment against Innovative for:

a.   Statutory damages of **$1,000,** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.   Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.   Such other relief that this Court deems just and proper

## COUNT XII
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f(1)
### Innovative Only

125.   Mr. Grossman adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

126.   From December 3, 2025 to January 30, 2026, Innovative has placed numerous calls to Mr. Grossman seeking to collect the Debt.

127.   Innovative's calls meet the definition of a "communication" under the FDCPA, 15 U.S.C. § 1692a(2).

128.   Innovative has reported the Debt to the CRAs monthly since assignment.

129.   Innovative's reporting meet the definition of a "communication" under the FDCPA, 15 U.S.C. § 1692a(2).

130.   Innovative violated 15 U.S.C. § 1692f(1) by collecting the Debt, when no legal basis or contract existed authorizing the Debt, as Mr. Grossman never resided at the apartment or otherwise authorized the alleged expenses.

WHEREFORE, Mr. Grossman respectfully requests that this Honorable Court enter judgment against Innovative for:

a.　　Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.　　Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.　　Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.　　Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on **February 27, 2026**, by:

**SERAPH LEGAL, P.A.**

*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
BGeiger@SeraphLegal.com
3505 E Frontage Road, Suite 145
Tampa, FL 33607
Tel: 813-321-2348
Fax: 855-500-0705
*Counsel for Plaintiff*

Page 23 of 23